GARY D. FELDON (DC Bar #987142)

BRIAN M. BOYNTON
Acting Assistant Attorney General

LESLEY FARBY
Assistant Branch Director, Federal Programs Branch

EMILY SUE NEWTON
Senior Trial Counsel
KYLA M. SNOW
MICHAEL F. KNAPP
Trial Attorneys
United States Department of Justice, Federal Programs Branch
1100 L Street NW, Room 11104
Washington, DC 20530
Tel.:    (202) 598-0905
Email:  gary.d.feldon@usdoj.gov

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# PENDLETON DIVISION

| | |
|---|---|
| **KATHRYN DUNLAP** and **JAMES DUNLAP**,<br><br>*Plaintiffs*,<br><br>v.<br><br>**THOMAS J. VILSACK**, in his official capacity as U.S. Secretary of Agriculture; and **ZACH DUCHENEAUX**, in his official capacity as Administrator, Farm Services Agency,<br><br>*Defendants*. | Civil Action No. 2:21-cv-00942-SU<br><br>**DEFENDANTS' MOTION TO STAY AND MEMORANDUM IN SUPPORT** |

Motion & Mem. In Support of Defs.' Mot. to Stay - 1

For the reasons stated in the attachment memorandum, Defendants Thomas J. Vilsack, in his official capacity as Secretary of Agriculture, and Zach Ducheneaux, in his official capacity as Administrator of the Farm Service Agency (collectively, USDA or Defendants), hereby move to stay the proceedings in this case, including briefing on Plaintiff's motion for a preliminary injunction, pending resolution of proceedings in related litigation that has been certified as a class action under Federal Rule of Civil Procedure Rule 23(b)(2).

Counsel for Defendants certify that, in compliance with Local Rule 7-1, they have conferred with counsel for plaintiffs by phone in efforts to reach an agreement on Defendants' requested stay but have been unable to do so, and Plaintiff opposes this request.

## INTRODUCTION

In March 2021, Congress enacted Section 1005 of the American Rescue Plan Act (ARPA), which authorizes funds to relieve the U.S. Department of Agriculture (USDA) debts held by certain socially disadvantaged farmers. Congress determined that this relief was necessary to remedy the lingering effects of decades of discrimination against minority farmers in the implementation of USDA farm loan programs, which effects were exacerbated by COVID-19 and the failure of prior relief to reach them. Plaintiffs Kathryn Dunlap and James Dunlap filed this action to challenge USDA's implementation of Section 1005 on equal protection grounds, and they seek a nationwide preliminary injunction against disbursement of Section 1005 funds. Pl.'s Mot. for Prelim. Inj., ECF No. 11. Plaintiffs' lawsuit is not the only challenge to Section 1005. There are currently twelve such lawsuits pending before courts across the country, and multiple courts have already granted the preliminary relief Plaintiffs seek from this Court.

Recent developments in the earliest-filed challenge to Section 1005 warrant a stay of this case. Specifically, on July 2, 2021, the Northern District of Texas certified two classes of farmers and ranchers bringing an equal protection challenge to Section 1005 like that Plaintiffs bring here.

Motion & Mem. In Support of Defs.' Mot. to Stay - 2

*See* Order on Class Cert. & PI, *Miller v. Vilsack*, 4:21-cv-595 (N.D. Tex.) (attached as Ex. A). At the same time, that court issued an injunction that (like those issued by other courts) prevents the Government from disbursing Section 1005 funds while the case is adjudicated on the merits. *Id.* Plaintiffs are members of the classes certified under Rule 23(b)(2) and Defendants will be bound by any relief granted to the classes with respect to Plaintiffs should the classes' equal protection claim prevail. Thus, continued adjudication of Plaintiffs' claim in this Court, separate from the class to which they belong, would be unnecessarily duplicative and risk inconsistent results. A stay, on the other hand, would not prejudice Plaintiffs, who will be bound by and benefit from any judgment applicable to the classes, and in the meantime already "have the protection they seek" in their preliminary-injunction motion, given the injunctions entered by other courts. Order, *Faust v. Vilsack*, 1:21-cv-548 (E.D. Wis.) (attached as Ex. B). But a stay would preserve judicial resources and prevent hardship to Defendants, who would otherwise be required to continue defending against duplicative claims in separate courts, many of which are being brought by these Plaintiffs' counsel. Finally, the requested stay would be consistent with those granted by other courts in similar circumstances.

For these reasons, this Court should stay proceedings in this case until final resolution of the class challenge to Section 1005 in *Miller*.[1] Alternatively, the Court should stay briefing on Plaintiffs' motion for a preliminary injunction, given the existence of multiple injunctions granting the relief Plaintiffs seek here.

## BACKGROUND

On June 24, 2021, Plaintiffs filed this action, alleging that USDA's implementation of ARPA Section 1005, which authorizes debt relief to socially disadvantaged farmers or ranchers,

---

[1] Defendants plan to file stay motions in all of the other related cases challenging Section 1005.

Motion & Mem. In Support of Defs.' Mot. to Stay - 3

violates their right to equal protection. *See* Compl., ECF No. 1. Five days later, Plaintiffs moved for a preliminary injunction. Pls.' Mot for Prelim. Inj., ECF No. 11.

This is one of twelve cases, brought in courts around the country, challenging the implementation of Section 1005 on equal protection grounds. *See Miller*, 4:21-cv-595; *Wynn v. Vilsack*, 3:21-cv-514 (M.D. Fla.); *Faust*, 1:21-cv-548; *Carpenter v. Vilsack*, 21-cv-103-F (D. Wyo.); *Holman v. Vilsack*, 1:21-cv-1085 (W.D. Tenn.); *Kent v. Vilsack*, 3:21-cv-540 (S.D. Ill.); *McKinney v. Vilsack*, 2:21-cv-212 (E.D. Tex.); *Joyner v. Vilsack*, 1:21-cv-1089 (W.D. Tenn.); *Rogers v. Vilsack*, 1:21-cv-1779 (D. Colo.); *Tiegs v. Vilsack*, 3:21-cv-147 (D.N.D.); *Nuest v. Vilsack*, 21-cv-1572 (D. Minn.).[2] *Miller*, the first-filed case, commenced on April 26, 2021. Compl., *Miller*, ECF No. 1.

Several weeks after *Miller* was filed, plaintiffs in *Faust* moved for a temporary restraining order (TRO) and preliminary injunction. Order, *Faust*. On June 10, the *Faust* court granted the TRO, enjoining Defendants from disbursing Section 1005 funds "until the Court rules on Plaintiffs' motion for a preliminary injunction." *Id.* at 10. In the meantime, the plaintiff in *Wynn* moved for a preliminary injunction, which the court granted on June 23. Order, *Wynn*, ECF No. 41. The nationwide preliminary injunction in *Wynn* prohibits Defendants "from issuing any payments, loan assistance, or debt relief pursuant to Section 1005(a)(2) . . . until further order from the Court," but does "not enjoin Defendants from continuing to prepare to effectuate the relief under Section 1005 in the event it is ultimately found to be constitutionally permissible." *Id.* at 48-49, n.19. After *Wynn* issued the nationwide preliminary injunction, the *Faust* court issued an order dissolving the TRO and staying the motion for a preliminary injunction, finding that the

---

[2] Defendants have not yet been served in all of these cases, and the Government does not waive any objections regarding service.

Motion & Mem. In Support of Defs.' Mot. to Stay - 4

plaintiffs could not establish irreparable harm. Order 3, *Faust*, ECF No. 49. The court concluded that because "[t]he *Wynn* court issued the same nationwide injunction" that the plaintiffs' asked the *Faust* court to issue, they had already received "the protection they seek," and so "[n]o purpose would be served by th[e] Court issuing another order granting (or denying) the same nationwide relief." *Id*. at 3-4. Shortly thereafter, the Western District of Tennessee issued a nationwide injunction identical to the one issued in *Wynn*. *See* Order, *Holman*, ECF No. 41.

While the preliminary injunction motions in *Faust* and *Wynn* were pending, the plaintiffs in *Miller* moved for class certification, Br. in Supp. of Mot. for Class Cert., *Miller*, ECF No. 13, and for a preliminary injunction, Br. in Supp. of Mot. for PI, *id*., ECF No. 18.³ And on June 30, 2021, the *Miller* court granted both motions. Order on Class Cert. & PI, *id*. Adopting the plaintiffs' proposed class definitions in full, the court certified the following two classes under Rule 23(b)(2):

1. All farmers and ranchers in the United States who are encountering, or who will encounter, racial discrimination from the United States Department of Agriculture on account of section 1005 of the American Rescue Plan Act.

2. All farmers and ranchers in the United States who are currently excluded from the definition of "socially disadvantaged farmer or rancher," as defined in 7 U.S.C. § 2279(a)(5)–(6)⁴ and as interpreted by the Department of Agriculture.

*Id*. at 5-6. Although two classes were certified, the plaintiffs and the Court emphasized that the classes were specific to the plaintiff's challenge to Section 1005. *Id*. at 13; Class Cert. Reply 1, ECF No. 41 ("The plaintiffs—at this point in the litigation—are seeking classwide relief *only* against the continued enforcement of the racial exclusions in section 1005 of the American Rescue

---

³ Although the plaintiffs in *Miller* assert equal protection, Title VI, and statutory construction claims, their preliminary injunction motion relied solely on their equal protection challenge to Section 1005. *See generally id*.

⁴ Section 1005 incorporates the definition of "socially disadvantaged farmer or rancher" set out in 7 U.S.C. § 2279(a).

Plan Act."); *id.* at 4 ("These classes are being proposed for the purpose of obtaining preliminary classwide relief against the racial exclusions in section 1005.").

Additionally, in granting the plaintiffs' preliminary-injunction motion, the court enjoined Defendants

> from discriminating on account of race or ethnicity in administering section 1005 of [ARPA] for any applicant who is a member of the Certified Classes. This prohibition encompasses: (a) considering or using an applicant Class Member's race or ethnicity as a criterion in determining whether that applicant will obtain loan assistance, forgiveness, or payments; and (b) considering or using any criterion that is intended to serve as a proxy for race or ethnicity in determining whether an applicant Class member will obtain loan assistance, forgiveness, or payments.

Order on Class Cert. & PI 22-23, *id.* Like the nationwide injunction in *Wynn*, the court's injunction in *Miller* precludes disbursement of Section 1005 funds while the case is adjudicated on the merits.[5] The *Miller* court ordered the parties to submit a proposed schedule for resolving the case on the merits by July 16.[6]

## STANDARD OF REVIEW

"The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). That power applies "especially in cases of extraordinary public moment," when "a plaintiff may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted." *Id.* at 707 (modifications omitted).

---

[5] On July 2, Defendants notified the court that it understood this injunction to be consistent with those entered in *Faust* and *Wynn*, in that it prohibits Defendants from issuing payments under Section 1005 but does not prohibit Defendants from "taking preparatory steps, including sending offer letters to eligible borrowers, to enable prompt payments if later permitted." Notice 2, *id.*, ECF No. 61. Per order of the court, the plaintiffs responded to Defendants' Notice on July 5. Resp., *id.*, ECF No. 63. Defendants filed a reply on July 6. *See* Reply, ECF No. 65.

[6] On June 29, Defendants filed a partial answer and partial motion to dismiss the plaintiffs' non-Section 1005 claims. *See* ECF Nos. 49, 51.

Motion & Mem. In Support of Defs.' Mot. to Stay - 6

When determining whether to grant a stay, courts must "weigh competing interests," including potential damage to the non-movant caused by a stay, hardship to the movant if required to go forward, "and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected from a stay." *Cohen v. Carreon*, 94 F. Supp. 2d 1112, 1115 (D. Or. 2000) (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)). With respect to the last factor, courts should "keep[] in mind [the] goal of promoting economy of time and effort for itself, for counsel, and for the litigants." *Id.* In particular, courts frequently grant stays when there are ongoing "independent proceedings which bear upon the case," because a stay is most "efficient for [the court's] own docket and the fairest course for the parties[.]" *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). "Allowing the same issue to be decided more than once wastes litigants' resources and adjudicators' time." *B&B Hardware, Inc. v. Hargus Indus.*, 575 U.S. 138, 140 (2015); *M.M. v. Lafayette Sch. Dist.*, 681 F.3d 1082, 1091 (9th Cir. 2012) ("It is well established that a district court has broad discretion to control its own docket, and that includes the power to dismiss duplicative claims.").

## ARGUMENT

The Court should stay the proceedings in this case until final resolution of the class challenge to Section 1005 in *Miller*.[7] All relevant factors support this proposed stay. Most significantly, a stay is in the interest of judicial economy: Because Plaintiffs are members of the classes challenging and will directly benefit from any relief granted in the classes' favor, staying this case would avoid unnecessarily duplicative litigation and potentially inconsistent results.

---

[7] Defendants have not appealed the order granting a preliminary injunction and certifying the classes in *Miller* but reserve their right to do so. If the classes are decertified for any reason, the parties can brief the Court on whether the stay should be lifted.

Motion & Mem. In Support of Defs.' Mot. to Stay - 7

Relatedly, a stay would not prejudice Plaintiffs, who are already protected by multiple preliminary injunctions and who may receive all the relief they are entitled to upon final judgment of the *Miller* class action. On the other hand, continuing to adjudicate Plaintiffs' claim in this Court and in *Miller* simultaneously would impose hardship on Defendants, who would be required to defend against identical claims in multiple courts at the same time—including in ten other courts around the country (with Plaintiffs' counsel here bringing five of those duplicative cases). Finally, courts regularly stay cases pending resolution of related class actions. This Court should do likewise. Alternatively, the Court should stay briefing on Plaintiffs' motion for a preliminary injunction, because Plaintiffs cannot establish irreparable harm in light of the injunctions in other cases granting the relief Plaintiffs seek here.

I. **A stay is in the interest of judicial economy.**

First, a stay of these proceedings would promote judicial economy because resolution of the class challenge to Section 1005 in *Miller* is likely to have a substantial or controlling effect on Plaintiffs' claim in this case. Plaintiffs undisputedly fall within the definition of the classes certified in *Miller*: They are farmers who allege that they are being subjected to racial discrimination due to USDA's provision of Section 1005 debt relief to socially disadvantaged farmers, because the definition of "socially disadvantaged farmer or rancher" does not automatically include farmers like them who self-identify as white. Compl. ¶¶ 1-5. The classes in *Miller* were certified under Rule 23(b)(2), which means that Plaintiffs cannot opt out. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 361-63 (2011). Thus, any relief ordered in *Miller* will apply in the same way to Plaintiffs as it does to all other class members. *Id*. at 361-62 (noting that the relief sought in a Rule 23(b)(2) class "perforce affect[s] the entire class at once"). Indeed, that relief will be *binding* on Plaintiffs and would preclude them, like all other class members, from

obtaining an alternative judgment in another proceeding. *Cooper v. Fed. Rsrv. Bank of Richmond,* 467 U.S. 867, 874 (1984).

Accordingly, permitting Plaintiffs to continue litigating their claim in this Court, separate from the rest of the class to which they belong, would create a risk of inconsistent results that could undermine the preclusive effect of a class-wide judgment and confuse Defendants' obligations to different class members. *See Dunn v. Air Line Pilots Ass'n*, 836 F. Supp. 1574, 1584 (S.D. Fla. 1993), *aff'd,* 193 F.3d 1185 (11th Cir. 1999) (noting that one consideration for granting a stay is the possibility of "avoid conflicting orders"). For instance, if the plaintiff class succeeds in its equal protection challenge to Section 1005 in *Miller* but Plaintiffs lose their claim here (or vice versa), Defendants would be subject to conflicting judgments concerning the constitutionality of Section 1005 and, importantly, their obligations toward these Plaintiffs. Staying this case pending resolution of the class challenge to Section 1005 in *Miller* would promote judicial efficiency by avoiding this risk of such contradictory outcomes.

That *Miller* was certified as a class action after Plaintiffs filed this case does not undermine the preclusive effect of any class-wide judgment or justify Plaintiffs' continued litigation of their claim separately in this Court.[8] *Miller* was the first-filed case, which underscores the conclusion that a stay here is appropriate and in the interest of judicial economy. "The 'first-to-file rule' is a doctrine of federal comity that permits a district court to decline jurisdiction over an action 'when a complaint involving the same parties and issues has already been filed in another district.'" *Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142, 1146 (E.D. Cal. 2010) (quoting *Pacesetter Sys., Inc. v. Medtronic, Inc.,* 678 F.2d 93, 94–95 (9th Cir. 1982)). It was "developed to

---

[8] As explained below, courts often stay proceedings while a motion for class certification is pending. *See infra* at 11 & n.10.

'serve the purpose of promoting efficiency well and should not be disregarded lightly.'" *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991) (citation and alterations omitted).

There is an especially good reason not to disregard that rule here: because Plaintiffs are class members, *the very same claim brought by these Plaintiffs* is being simultaneously litigated in two courts. And, as Plaintiffs and Defendants will both be bound by any class-wide judgment on Section 1005, litigating the cases separately does not benefit Plaintiffs or serve judicial economy, but only burdens judicial resources at the risk of creating conflicting outcomes. Moreover, both cases are still in their early stages, with a proposed schedule due in *Miller* by July 16. Thus, staying this case at this early stage of the proceedings would not cause unnecessary disruption to litigation of Plaintiffs' claim, but would instead further promote its efficient resolution before any case deadlines have passed in *Miller*. The Court should therefore stay this case pending resolution of the first-filed equal protection class challenge to Section 1005 in *Miller*.

## II.     A stay would not prejudice Plaintiffs and would avoid hardship to the Government.

Additionally, and for the same reasons, staying this case pending resolution of the class challenge to Section 1005 in *Miller* would not prejudice Plaintiffs. Again, the classes certified in *Miller* challenge the same agency action and seek the same relief as Plaintiffs seek here. *Compare* Pls.' Br. in Supp. of Prelim. Inj. ECF No. 18, *Miller* (challenging the implementation of Section 1005 based on USDA's interpretation of "socially disadvantaged farmer or rancher" with reference to race), *with* Pls.' Mot. for Prelim. Inj., ECF No. 11 (same). Indeed, the *Miller* court has already ordered the relief that Plaintiffs seek in this case: a preliminary injunction prohibiting the Government from disbursing payments under Section 1005. *See* Order on Class Cert. & PI, *Miller*; *see also* Pls.' Mot. for Prelim. Inj. 1-3. And because Defendants will be bound by a final judgment

Motion & Mem. In Support of Defs.' Mot. to Stay - 10

on the class claim with respect to these Plaintiffs, they are not harmed by a stay of their duplicative case.

Relatedly, a stay of the proceedings in this case would avoid hardship to the Government. Specifically, requiring the Defendants to defend Plaintiffs' claim in this Court and the class action in *Miller* at the same time (along with all other pending cases), with the potential for different case schedules, would drain the courts' and the Government's resources without any apparent benefit to Plaintiffs. Indeed, the burden on Defendants is already significant, given that there are currently eleven other substantively similar lawsuits pending around the country, with additional requests for preliminary injunctive relief pending in several of those cases. Counsel for Plaintiffs here have filed nearly identical complaints in four other jurisdictions, two of which they filed after they had already obtained the preliminary injunction in this case.[9] Counsel should not be permitted to continue to file and litigate duplicative lawsuits in multiple jurisdictions, especially where the preliminary relief they seek in those cases exactly duplicates the relief they already obtained in another court. Moreover, particularly given the importance of the issues at stake, the Government should not be compelled to defend multiple cases raising substantially similar claims on different schedules and potentially subject to different discovery obligations—all while simultaneously defending against duplicative requests for nationwide preliminary injunctions. *Cf. Clinton*, 520 U.S. at 707 (explaining that "especially in cases of extraordinary public moment, a plaintiff may be required to submit to delay" (modifications omitted)).

---

[9] *See Wynn*, 3:21-cv-514; *Kent*, 3:21-cv-540; *McKinney*, 2:21-cv-212; *Tiegs*, 3:21-cv-147.

### III. Courts regularly stay cases pending resolution of related class actions.

Finally, a stay here would be consistent with other courts' recognition that a stay (or even dismissal) is generally warranted upon certification of a class of which the plaintiff is a member.[10] *See, e.g., Jiaming Hu v. U.S. Dep't of Homeland Sec.*, 4:17-cv-02363, 2018 WL 1251911, at *4 (E.D. Mo. Mar. 12, 2018) ("Since class members generally cannot relitigate issues raised in a class action after it has been resolved, a class member should not be able to prosecute a separate equitable action once his or her class has been certified." (internal quotation marks omitted) (citing circuit cases dismissing actions where the plaintiff was a member of certified class in another case)); *see also Mackey v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 112 F. App'x 89, 91 (2d Cir. 2004) (affirming dismissal without prejudice "based on the rule against duplicative litigation" where plaintiff's allegations "duplicated claims that had been included in separate class actions" against the defendant, and plaintiffs "were members of those classes"); *Aleman ex rel. Ryder Sys., Inc. v. Sancez*, 21-cv-20539, 2021 WL 917969, at *2 (S.D. Fla. Mar. 10, 2021) (noting that "the Court entered an order staying proceedings" pending resolution of a related class action, "recognizing that the cases are related, and that the resolution of the issues raised in the Class Action will necessarily impact the proceedings in" the case); *Richard K. v. United Behavioral Health*, 18-cv-6318, 2019 WL 3083019, at *7 (S.D.N.Y. June 28, 2019), report and recommendation adopted, 18-cv-6318, 2019 WL 3080849 (S.D.N.Y. July 15, 2019) (explaining that stay and dismissal without prejudice "are routinely found appropriate where, as here, the

---

[10] Indeed, federal courts will regularly stay cases when a class certification motion is only *pending*, rather than already granted, in an earlier-filed related case. *See, e.g., Sanchez-Cobarrubias v. Bland*, CV609-005, 2011 WL 841082, at *1 (S.D. Ga. Mar. 7, 2011) (reciting case history); *Bargas v. Rite Aid Corp.*, CV1303865MWFJEMX, 2014 WL 12538151, at *3 (C.D. Cal. Oct. 21, 2014).

claims made in an individual lawsuit overlap with the claims being pursued by a certified class of which the individual plaintiff is a member").

In such cases, courts have ordered a stay of the same scope Defendants seek here, that is, a stay of all proceedings until final resolution of a related class action. *See, e.g., Gonzales v. Berryhill*, 18-cv-603, ECF No. 28 (D.N.M. Mar. 5, 2019) (staying proceedings until the district court in a related case "issues a decision on the forthcoming motion for class certification and, if a class is certified in [the related case], until the conclusion of all proceedings in [the related case], including any appeals.").

The First Circuit's decision in *Taunton Gardens Co. v. Hills* illustrates the propriety of a stay in circumstances strikingly similar to this case. 557 F.2d 877 (1st Cir. 1977). There, the plaintiffs challenged "the administration of a major federal program and the disbursement of a significant amount of federal money," and the case thus "present[ed] issues of 'public moment.'" *Id.* at 879. And there, much like here, the implementation of that federal program had spurred litigation "in more than ten district courts" around the country, and the Government was subject to multiple injunctions. *Id.* Moreover, like this case, a related action was certified as a class action. *See Taunton Gardens Co. v. Hills*, 421 F. Supp. 524, 526 (D. Mass. 1976). Although the plaintiffs in *Taunton Gardens* were not members of that class, the court noted that they challenged the same program and sought identical relief and, thus, that the class action determined the merits of the case. *Id.* Accordingly, the district court found it was in "the interest of justice" to stay all proceedings—including litigation of the pending motion for preliminary injunction[11]—"pending entry of a final judgment in the class action case." *Id.* The First Circuit upheld the stay, also

---

[11] The court also noted that granting the requested preliminary injunction "would be inconsistent with the granting of the stay which this Court has ruled appropriate herein." *Id.*

Motion & Mem. In Support of Defs.' Mot. to Stay - 13

emphasizing that it was in the "public interest, the court's interest in efficient procedures, and the interest of justice" to stay the case and afford the Government "a reasonable opportunity to resolve its obligations in the national class action." 557 F.2d at 879. It also pointed out that the stay's duration, lasting until an appeal of the class action judgment was resolved, was reasonable. *Id.*

All of the factors considered by *Taunton Gardens* support a stay here: Plaintiffs challenge a significant federal program presenting issues of "public moment," and undersigned counsel are defending against claims in twelve courts around the country. Additionally, the recently certified classes in *Miller* seek the same relief Plaintiffs seek in this case—and indeed, since Plaintiffs are members of those classes, any relief granted by that court will operate to protect Plaintiffs together with all other class members. Finally, the scope of the stay requested here—until resolution of the class action—is the same as that approved in *Taunton Gardens* and other cases. There, as here, the "public interest, the court's interest in efficient procedures, and the interest of justice" support a stay of all procedures pending resolution of the class challenge to Section 1005 in *Miller*.

**IV.     Alternatively, the Court should stay briefing on Plaintiffs' motion for a preliminary injunction, which would duplicate the injunctions entered by other courts.**

Alternatively, if the Court is not inclined to stay all proceedings in this case, it should stay briefing on Plaintiffs' motion for a preliminary injunction, because the courts in *Miller*, *Wynn*, and *Holman* have already entered injunctions granting the same preliminary relief Plaintiffs seek here. Given the existence of those other injunctions, Plaintiffs cannot establish irreparable harm, a necessary prerequisite to obtaining preliminary injunctive relief. *See, e.g.*, *Nat'l Urb. League v. DeJoy*, 20-cv-2391, 2020 WL 6363959, at *11 (D. Md. Oct. 29, 2020) (denying preliminary injunction because plaintiffs had failed to demonstrate irreparable harm where there was no apparent distinction between the relief they sought and injunctions already entered); *cf. Washington v. Trump*, C17-0141, 2017 WL 4857088, at *6 (W.D. Wash. Oct. 27, 2017) (because

Motion & Mem. In Support of Defs.' Mot. to Stay - 14

another district court had "already provide[d] Plaintiff States with virtually all the relief they seek," plaintiffs will not incur "any significant harm" by the court's staying consideration of their TRO motion); *Int'l Refugee Assistance Project v. Trump*, 17-cv-0361, 2017 WL 1315538, at *2 (D. Md. Apr. 10, 2017) ("[I]n light of the current nationwide injunction of Section 6 by the United States District Court of the District of Hawaii, a stay would not impose any hardship on Plaintiffs or result in irreparable harm."); *Hawai'i v. Trump*, 233 F. Supp. 3d 850, 853 (D. Haw. 2017) ("[T]he Western District of Washington's nationwide injunction already provides the State with the comprehensive relief it seeks in this lawsuit. As such, the State will not suffer irreparable damage . . . if the Court were to grant Defendants' motion to stay."); *Pars Equality Ctr. v. Trump*, No. 17-cv-255, ECF No. 84 at 2 (D.D.C. May 11, 2017) (staying resolution of preliminary injunction motions and noting that "[t]he existence of two other nationwide injunctions temporarily casts uncertainty on the issue of whether the harms Plaintiffs allege are actually imminent or certain").

Indeed, in *Faust*, the Eastern District of Wisconsin recently dissolved its TRO and stayed the plaintiffs' motion for a preliminary injunction on this basis. Order, *Faust*. The *Faust* court specifically addressed the preliminary injunction entered in *Wynn*, explaining that the court there had "issued the same nationwide injunction" the plaintiffs asked *Faust* to issue, *id.* at 3-4: an injunction prohibiting disbursement of funds under Section 1005, *see* Order 48-49, *Wynn*. Thus, the court concluded, the plaintiffs already had "the protection they seek," and "[n]o purpose would be served by [the] [c]ourt issuing another order granting (or denying) the same nationwide relief." Order 4, *Faust*. The *Faust* court therefore stayed the plaintiffs' preliminary injunction motion, reasoning that if "the injunction issued by the court in *Wynn* is vacated or materially altered, the stay can be lifted and [the] [p]laintiffs' motion can be given prompt consideration by the Court."

Motion & Mem. In Support of Defs.' Mot. to Stay - 15

*Id.* at 7. The same is true here. Plaintiffs cannot show irreparable harm, because other courts have already granted the preliminary relief Plaintiffs seek. And though the *Faust* court focused on the nationwide preliminary injunction entered in *Wynn*, the existence of the second and third preliminary injunctions in *Miller* and *Holman* is further reason to stay Plaintiffs' motion here. Accordingly, while the better course is to stay all proceedings in this case, if the Court is not inclined to do so, it should stay briefing on Plaintiffs' motion for a preliminary injunction because Plaintiffs cannot establish irreparable harm. If the injunctions in *Miller*, *Wynn*, or *Holman* are lifted or altered, the Court may lift the stay and order expedited briefing on the motion in this case as appropriate.

## CONCLUSION

For these reasons, the Court should stay proceedings in this case pending resolution of the class challenge to Section 1005 in *Miller*. Alternatively, the Court should stay briefing on Plaintiffs' motion for a preliminary injunction, given the existence of multiple injunctions granting the relief Plaintiffs seek here.

DATED: July 12, 2021

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

LESLEY FARBY
Assistant Branch Director
Federal Programs Branch

*/s/ Gary Feldon*
EMILY SUE NEWTON
Senior Trial Counsel
KYLA M. SNOW
MICHAEL F. KNAPP
GARY D. FELDON (DC Bar #987142)
Trial Attorneys
United States Department of Justice, Federal Programs Branch
1100 L Street NW, Room 11104
Washington, DC 20530
Tel.:   (202) 598-0905
Email:  gary.d.feldon@usdoj.gov

*Counsel for Defendants*